UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| B.K.L., a minor, by Shawana Love, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | 1:07-cv-1357-SEB-JMS |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) ) ) | |
| Defendant. | ) | |

**Entry Discussing Complaint for Judicial Review**

B.K.L. ("BKL"), a minor, seeks judicial review of the determination by the Commissioner of the Social Security Administration ("Commissioner") that she was not eligible for Supplemental Security Income ("SSI") under the Social Security Act, 42 U.S.C. § 301, *et seq.* (the "Act").

For the reasons explained in this Entry, the Commissioner's decision must be **remanded for further proceedings.**

**I. Background**

On September 30, 2003, an application for child's SSI was filed on behalf of BKL. The application was denied initially and upon reconsideration. BKL's request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on April 28, 2006. BKL and her mother were present, with their attorney. Medical and other records were introduced into evidence, and BKL and her mother testified. The ALJ issued a decision on October 27, 2006, denying benefits. The ALJ's decision became the final administrative decision on October 1, 2007, when the Appeals Council denied BKL's request for review. *See Getch v. Astrue,* 539 F.3d 473, 480 (7th Cir. 2008). This action for judicial review followed. The court has jurisdiction over the complaint pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) BKL was born on February 16, 1994, and therefore she was a school-age child on September 30, 2003, the date the application was filed, and was a school-age child at the time of the ALJ's decision; (2) BKL had not engaged in substantial gainful activity at any time relevant to the ALJ's decision; (3) BKL had severe impairments of Attention Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiant Disorder ("ODD"), and a learning disability; (4) BKL did not have an impairment that met or medically equaled one of the listed impairments in of 20 C.F.R. Part 404, Subpart P, Appendix 1; and (5) BKL did not have an impairment or combination of impairments that functionally equaled the listings. With these findings in hand, and through the application of applicable rules, the ALJ concluded that BKL had not been disabled as defined in the Act since September 30, 2003, the date the application was filed.

## II.  Discussion

### A.  Applicable Law

An individual under the age of 18 shall be considered disabled for purposes of SSI if that individual has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).

To be found disabled, a child must show that (1) she is not engaged in performing substantial gainful activity; (2) she has a medically determinable impairment that is severe; and (3) her impairments meet, medically equal, or functionally equal the listings.  20 C.F.R. § 416.924(b), (c), (d).  At step three of the evaluation process, if a child's impairments do not meet or medically equal any listing, the ALJ will determine whether the child's impairments functionally equal the listings.  20 C. F. R. § 416.926a.  In doing so, an ALJ considers how a child functions in six domains:

　　(i) Acquiring and using information;
　　(ii) Attending and completing tasks;
　　(iii) Interacting and relating with others;
　　(iv) Moving about and manipulating objects;
　　(v) Caring for yourself; and,
　　(vi) Health and physical well-being.

20 C. F. R. § 416.926a(b).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise was free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B.     Analysis

The ALJ determined that BKL had severe impairments consisting of ADHD, ODD, and a learning disability. (R. at 21). The ALJ determined that BKL's impairments did not meet or equal any listings. *Id.* The ALJ further determined that BKL's impairments, singly or in combination, did not functionally equal the listings. (R. at 21-24). BKL asserts several arguments in support of her contention that the ALJ's decision was not supported by substantial evidence.[1]

BKL first argues that her impairments met or medically equaled Listing 112.04 (mood disorders), Listing 112.08 (personality disorders) and 112.11 (ADHD).[2] In this case, the ALJ did not mention any listings, much less discuss any listing in relation to the evidence. He concluded in a single sentence that BKL did not have an impairment that met or medically equaled one of the listed impairments. (R. at 21). He did not refer to any medical source opinion in support of this finding.

BKL asserts that the ALJ erred in failing to cite or discuss any listing in his step three decision, rendering his analysis "perfunctory." She argues that "[t]he ALJ was required, however, under Seventh Circuit law to cite specifically every Listing relevant to the evidence." The law is not quite that rigid. An ALJ's failure to mention appropriate listings, if combined with a perfunctory analysis in light of the evidence provided, may compel a remand. *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) ("an ALJ should mention the specific listings he is considering and his failure to do so, if combined with a perfunctory analysis, may require a remand") (internal quotation omitted). *See also Rice v. Barnhart*, 384 F.3d 363, 369-70 (7th Cir. 2004) ("As to Rice's argument that the ALJ's failure to explicitly refer to the relevant listing alone necessitates reversal and remand, we have not yet so held and decline to do so here.").

---

[1]BKL directs her "denial of due process" claim not at this particular ALJ's behavior or decision, but at her view of the alleged policy and practice of the Social Security Administration to ignore all evidence which is favorable to a claimant's claim. She argues that the agency's denial decisions are "never rational, reasonable or complete." (Plt's Reply at 4). Not only has the plaintiff submitted no evidence to support such an exaggerated critique, but this argument far exceeds the proper scope of review in this case.

[2]The provisions of Listings 112.04, 112.18 and 112.11 are attached to this decision as Exhibit A.

At the hearing and on appeal to the Appeal Council, BKL's counsel stated the position that BKL's disorders met or medically equaled Listings 112.04, 112.08 and 112.11. The court acknowledges that BKL does not point to specific evidence of record showing that each of the criteria of those listings were satisfied. *See Ribaudo*, 458 F.3d at 583 (a claimant bears burden of proving a condition meets a listed impairment and he must show he meets all of the criteria in the listing). The ALJ's failure to discuss any listing, especially those raised by the claimant, thwarts any meaningful judicial review. *See Brindisi v. Barnhart*, 315 F.3d 783, 786-87 (7th Cir. 2003). At the very least, the ALJ should have considered Listings 112.04, 112.08 and 112.11. The court also notes that, although not discussed by the ALJ, on three occasions the State Agency evaluators concluded that BKL's impairments did not meet or equal a listing. (R. at 142, 230, 259). Although the ALJ's analysis was clearly "perfunctory," in light of the record and the lack of specific evidence cited by BKL, this error alone would not warrant a remand. Because the case is being remanded on other grounds, however, the ALJ shall articulate his reasoning to support his conclusion that BKL's impairments did not meet or equal Listings 112.04, 112.08, or 112.11.

Next, BKL argues that the ALJ erred in not finding that her combined impairments functionally equaled a listed impairment. To "functionally equal" the listings, a claimant's impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C. F. R. § 416.926a(a).[3] The ALJ determined that BKL had "marked" limitations in interacting and relating with others; "less than marked" limitations in acquiring and using information and attending and completing tasks; and "no limitations" in moving about and manipulating objects, caring for herself (self care) and health and physical well-being. (R. at 23-24). BKL contends that the evidence supports a finding that BKL had an extreme limitation in the domain of interacting and relating with others and a "marked" limitation in the domains of acquiring and using information and attending and completing tasks.

The ALJ acknowledged that three teachers assessed BKL as having "marked" limitations in acquiring and using information and in attending and completing tasks, but concluded that he was "not bound by them because they are conclusions reserved to me" and because the underlying evidence did not support such findings. (R. at 22, 385-87). The ALJ noted that the domain of attending and completing tasks "considers how well the claimant is able to focus and maintain attention, and how well she is able to begin, carry through, and finish activities, including the pace at which she performs activities and the ease of changing activities." (R. at 23) (citing 20 C. F. R. § 416.926a(h)). The ALJ stated

---

[3]The regulations provide that a claimant has "a 'marked' limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. 'Marked' limitation also means a limitation that is 'more than moderate but 'less than extreme.' It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." 20 C. F. R. § 416.926a(e).

4

that reports in this area varied. He recited one report stating that BKL had "no behaviors which are impediments to learning" and that one observer reported that BKL was appropriate in a classroom setting. (R. at 23). The ALJ, however, failed to recite and weigh any evidence that was favorable to BKL's claim.

The treating psychiatrist, Dr. Rowland, reported a long standing history of an attention deficit hyperactivity disorder of the combined type as well as an oppositional and defiant behavior pattern at times in the context of the history of having been the victim of early childhood sexual abuse. (R. at 156-170). Dr. Rowland reported that BKL continued to have some "very significant ADHD symptoms, both at home and at school despite her current [medication]. . . ." (R. at 157). The school psychologist reported that in the school setting, BKL continued to display difficulties with attention and impulsivity and her behavior should be monitored very carefully. (R. at 295). BKL's math teacher specifically noted a failure to complete homework and problems staying awake in class. (R. at 387). A special education teacher who reported that BKL had a "marked" limitation in attending and completing tasks specified that work completion was an area of need. (R. at 386).

The ALJ also failed to discuss the October 2003 ADHD Rating Scale form completed by teacher Mr. Majors reflecting that BKL was often forgetful in daily activities, often easily distracted, often talked excessively, often had difficulty organizing tasks and activities, often left her seat in classroom or in other situations when it was inappropriate, often had difficulty sustaining attention in tasks or play activities, often fidgeted with hands or feet or squirmed in seat, often failed to give close attention to details or made careless mistakes in schoolwork, and very often did not seem to listen when spoken to directly. (R. at 197). The regulations provide some examples of limited functioning in the domain of attending and completing tasks. 20 C.F.R. § 416.926a(h)(3). They include being easily startled or distracted; being slow to focus on, or failing to complete, activities of interest to the claimant; repeatedly becoming sidetracked from activities or frequently interrupting others; being easily frustrated and giving up on tasks; and requiring extra supervision to keep engaged in an activity. *Id.* In light of the evidence viewed in the context of the domain attending and completing tasks, the ALJ did not adequately explain his conclusion that the "underlying evidence" from the teachers who observed BKL on a daily basis did not "appropriately describe the claimant's limitations within the meaning of the childhood disability regulations." (R. at 22).

Although the ALJ need not discuss every piece of evidence, he may not "select and discuss only that evidence that favors his ultimate conclusion." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In this case the ALJ selected portions of the record to conclude that BKL's symptoms were not as severe as the complete record indicates. The court "require[s] an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies." *Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007).

Given the ALJ's failure to discuss "favorable" evidence, the court cannot be confident that the ALJ considered the important evidence of record, nor can it trace the path of the ALJ's reasoning. *See Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) (case remanded where ALJ failed to explain why he gave no weight to portions of school records which

5

supported a finding that child was disabled). *See also Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (an ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence . . . [and to enable] us to trace the path of [his] reasoning.") (internal quotation omitted).

BKL next challenges the ALJ's credibility finding. The ALJ determined that the statements concerning the intensity, persistence and limiting effects of BKL's symptoms were not entirely credible. (R. at 21). He reasoned that reports of irregular compliance with BKL's medications "lessen[ed] the credibility of her mother's statements" that the medication was not effective. (R. at 22). It is true that conditions that are controllable by medication do not entitle an applicant to benefits. *Prochasks v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (where mental impairment was treated and controlled by medication, condition was not disabling). BKL argues, however, that the ALJ failed to comply with Social Security Ruling 96-7p by seeking any explanations for such noncompliance. The court agrees. The ALJ failed to consider, for example, the evidence that for a period of time the medicine caused adverse side effects of heart burn and possible reflux. (R. at 169).

The Seventh Circuit has addressed this precise situation. "In assessing credibility, infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding *where the claimant does not have a good reason for the failure or infrequency of treatment.*" *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (emphasis added) (citing SSR 96-7p). "[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Id.* (quoting SSR 96-7p). Where the ALJ drew a negative inference as to the claimant's credibility from his lack of medical care, the ALJ improperly failed to question the claimant about the lack of treatment or noncompliance. *Id.* "The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner." SSR 96-7p. Here, the ALJ failed to make such an inquiry and yet it is clear that he based his decision in large part on the evidence that showed noncompliance on the part of BKL's parents in keeping her therapy appointments and giving her medications correctly and regularly. (R. at 21-22).

In addition, lack of compliance was the only specific example given by the ALJ as to his basis for the credibility finding. Such limited discussion reveals nothing as to whether BKL's parents' statements concerning her behavior were deemed credible. An ALJ's credibility determination must contain specific reasons for the finding. *Craft,* 539 F.3d at 678. A credibility finding "must be supported by the evidence and must be specific enough to enable the claimant and a reviewing body to understand the reasoning." *Id.* The ALJ based his credibility finding on objective rather than subjective considerations and therefore the court has "greater freedom to review the ALJ's decision." *Id.* In this case, the ALJ's credibility finding is so lacking in specificity that it requires remand. Under these circumstances, the ALJ failed to build an accurate and logical bridge between the evidence and his conclusions. *Ribaudo,* 458 F.3d at 584; *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir.2003).

### III.  Conclusion

For the reasons discussed in this Entry, the ALJ's conclusions at step three of the sequential analysis are not supported by substantial evidence and the court is required to **remand** the case to the ALJ for further consideration. *Melkonyan v. Sullivan,* 501 U.S. 89, 98 (1991) (a court may remand the case after passing on its merits and issuing a judgment affirming, modifying, or reversing the Commissioner's decision, a "sentence four" remand). Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 03/26/2009

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana